UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
LUIS INCLAN, IVAN KRAUCHANKA,
SZILVIA REP, MAME FATOU WADE, and
SKANDER SOLTANI, on behalf of
themselves, FLSA Collective
Plaintiffs and the Class,

                          Plaintiffs,

            - against -

NEW YORK HOSPITALITY GROUP, INC.,
RAJMAR HOLDINGS, INC. and RAJU S.
MIRCHANDANI,

                      Defendants.
----------------------------------X

**MEMORANDUM AND ORDER**

12 Civ. 4498 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Before the Court are cross-motions for summary judgment in a collective action brought under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, <u>et seq.</u> ("FLSA"), also involving supplemental claims under the New York Labor Law ("NYLL"). Plaintiffs, who are former waiters at a Manhattan restaurant called "Le Bateau Ivre," operated by defendant New York Hospitality Group, Inc. ("NYHG"), move for partial summary judgment, asking the Court to rule: (1) that defendants are liable under the FLSA and the NYLL for unpaid minimum wages due to defendants' failure to meet the requirements for claiming tip credit allowances under the FLSA and the NYLL; (2) that defendants are liable under the FLSA and the NYLL for unpaid overtime wages; (3) that defendants are liable under the Wage

Theft Prevention Act (an amendment to the NYLL) for statutory damages for their failure to provide proper wage notices and wage statements; (4) that defendants are liable under the NYLL for unpaid spread-of-hours payments; (5) that defendants are liable under the FLSA and the NYLL for liquidated damages; (6) that plaintiffs are entitled to the benefit of a three-year limitations period for their FLSA claims; and (7) that defendants Raju S. Mirchandani and NYHG are jointly and severally liable under the FLSA and the NYLL as joint employers of plaintiffs.   In their cross-motion for summary judgment, Mirchandani and defendant Rajmar Holdings, Inc. ("RHI"; collectively, the "Moving Defendants") ask the Court to rule that they are not liable as employers under the FLSA and the NYLL and to dismiss them from the case.   For the reasons stated herein, plaintiffs' motion is granted in part and denied in part, and the Moving Defendants' motion is granted in part and denied in part.

## I.  BACKGROUND[1]

The following facts are undisputed except as noted.[2]  At all relevant times, Le Bateau Ivre (or the "Restaurant") was a Manhattan restaurant in the style of a French bistro.  Am. Compl.  ¶ 6;  Pls.' 56.1 Stmt.  ¶ 30;  Deposition of Raju Mirchandani at 9:19-21 ("Mirchandani Dep."), Bellovin Aff. Ex.

---

[1]    Citations to the record refer to the First Amended Class and Collective Action Complaint, dated November 13, 2012 ("Amended Complaint" or "Am. Compl."); plaintiffs' memorandum of law in support of plaintiffs' motion, dated July 28, 2014 ("Pls.' Mem."); plaintiffs' Local Rule 56.1(a) statement of material facts, dated July 28, 2014 ("Pls.' 56.1 Stmt."); the declaration of C.K. Lee, Esq., dated July 28, 2014 ("Lee Decl."), and exhibits thereto; defendants' memorandum of law in opposition to plaintiffs' motion, dated August 15, 2014 ("Defs.' Opp. Mem."); defendants' Local Rule 56.1(b) counterstatement of material facts, dated August 15, 2014 ("Defs.' 56.1 Counterstmt."); the affirmation of Marshall B. Bellovin, Esq., dated August 15, 2014 ("Bellovin Aff."), and exhibits thereto; plaintiffs' reply memorandum of law in support of plaintiffs' motion, dated August 22, 2014 ("Pls.' Reply Mem."); the Moving Defendants' memorandum of law in support of the Moving Defendants' motion, dated July 28, 2014 ("Defs.' Mem."); defendants' Local Rule 56.1(a) statement of material facts, dated July 28, 2014 ("Defs.' 56.1 Stmt."); plaintiffs' memorandum of law in opposition to the Moving Defendants' motion, dated August 15, 2014 ("Pls.' Opp. Mem."); plaintiffs' Local Rule 56.1(b) counterstatement of material facts, dated August 15, 2014 ("Pls.' 56.1 Counterstmt."); and the Moving Defendants' reply memorandum of law in support of the Moving Defendants' motion, dated August 29, 2014 ("Defs.' Reply Mem."), and other documents filed in this case by number ("Doc. ___").

[2]    Both sides do not comply with summary judgment procedure by responding to their adversary's Rule 56.1(a) statements of material facts with counterstatements in which they purport to lack sufficient knowledge to admit or dispute some of those facts.  See, e.g., Pls.' 56.1 Counterstmt. ¶ 21 ("Plaintiffs do not possess knowledge or information sufficient to form a belief as to the truth or falsity of the facts set forth in ¶ 21 of Defendants' Rule 56.1 Statement"); Defs.' 56.1 Counterstmt. ¶ 4 ("Defendants do not have the requisite knowledge to admit or dispute the accuracy of Par. # 4.").  Such denials of knowledge or information sufficient to form a belief are inadequate at the summary judgment stage to "rebut a fact submitted as undisputed by a moving party."  Whitehurst v. 230 Fifth, Inc., 998 F. Supp. 2d 233, 248 (S.D.N.Y. 2014); see, e.g., Cooper v. City of New Rochelle, 925 F. Supp. 2d 588, 605 (S.D.N.Y. 2013).  Consistent with this principle, our local rule provides that "[e]ach numbered paragraph in the [moving party's] statement of material facts . . . will be deemed to be admitted for the purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the [opposing party's] statement."  Local Civ. Rule 56.1(c).  Accordingly, we deem the uncontroverted assertions contained in the moving parties' Rule 56.1 statements, where supported by evidence (or, as appropriate, an absence of evidence), to be admitted.

C.   The five plaintiffs (Luis Inclan, Ivan Krauchanka, Szilvia Rep, Mame Fatou Wade, and Skander Solanti) were employees at the Restaurant, where they worked as waiters and two of them also worked as bartenders.  Pls.' 56.1 Stmt. ¶¶ 1, 5, 9, 13, 17. Plaintiffs' dates of employment at the Restaurant varied but overlapped; the first plaintiff (Wade) was hired in March 2005, and the last one (Soltani) left the Restaurant in June 2012. Pls.' 56.1 Stmt. ¶¶ 13, 17; Defs.' 56.1 Stmt. ¶¶ 16, 17.

Throughout their employment at the Restaurant, the plaintiffs were paid at what the parties call a "tip credit minimum wage rate," which was $5.00 per hour at the dates of their termination.  Pls.' 56.1 Stmt. ¶¶ 3, 7, 11, 15, 19.  In other words, each plaintiff was paid the prevailing hourly minimum wage, minus an allowance permitted by law (under some circumstances) for employees who customarily receive tips.  See Pls.' 56.1 Stmt. ¶ 3; Pls.' Mem. at 1; Defs.' Opp. Mem. at 2. However, plaintiffs did not receive a notice of the Restaurant's intent to take a tip credit, nor did they receive a wage notice form from the Restaurant.  Pls.' 56.1 Stmt. ¶¶ 4, 8, 12, 16, 20, 23, 24.

From time to time, plaintiffs worked more than forty hours per week.  On at least some of those occasions, the Restaurant did not fully compensate them (even assuming a tip credit were allowed) for their overtime hours, which would have required

4

multiplying the general minimum wage rate by one and one-half and then subtracting the amount of the permissible tip credit. Pls.' 56.1 Stmt. ¶ 27; see Defs.' 56.1 Counterstmt. ¶ 27. Additionally, plaintiffs sometimes worked more than ten hours per day. On those occasions, the Restaurant did not pay them an additional hour's wage for their "spread of hours," as was required by New York law. Pls.' 56.1 Stmt. ¶ 28.

The Restaurant was operated by defendant NYHG, a corporation wholly owned by defendant Mirchandani. Pls.' 56.1 Stmt. ¶ 30; Defs.' 56.1 Stmt. ¶¶ 21, 22. Mirchandani was also the sole owner of defendant RHI, a separate entity with no relation to the Restaurant and with no employees in common with NYHG. Defs.' 56.1 ¶ 23, 24. Mirchandani's involvement in the Restaurant's affairs was substantial, although the parties vigorously contest the degree of this involvement. As discussed in greater detail in Part II.H below, Mirchandani signed the lease and contracts on the Restaurant's behalf, hired the Restaurant's managers and chef, met with the managers weekly to discuss the Restaurant's business, and set employees' pay rates. Mirchandani Dep. 9:11-18, 10:17-19, 11:2-10, 21:11-1828:7-29:6.

The initial complaint in this action was filed on June 8, 2012, and the Amended Complaint (which is the operative complaint), was filed on November 13, 2012. Docs. 1, 15. The action was certified as an FLSA collective action on April 2,

2013.  Doc. 26.[3]  Following discovery, plaintiffs and the Moving Defendants filed the instant cross-motions for summary judgment on July 28, 2014.  The motions were fully briefed on August 29, 2014.

## II.  DISCUSSION

Plaintiffs do not seek summary judgment on the amount of damages, but only as to issues of liability that will structure further proceedings.  Similarly, resolution of the Moving Defendants' motion will decide which defendants remain in the case but will not determine the amount of the remaining defendants' liability.

In Part II.H below, we explain the reasons for our conclusion that Mirchandani will be held jointly and severally liable with NYHG.  Throughout this discussion, we refer to the "Restaurant's" liability as shorthand for the joint and several liability of those two defendants.

### A.   Summary Judgment Standard

A motion for summary judgment is appropriately granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

---

[3]    Although the Amended Complaint includes both FLSA collective action and class action allegations, see Am. Compl. ¶¶ 11-21, plaintiffs have never pursued class certification pursuant to Fed. R. Civ. P. 23.

P. 56(a).    In  this  context,  "[a]  fact  is  'material'  when  it
might  affect  the  outcome  of  the  suit  under  governing  law,"  and
"[a]n  issue  of  fact  is  'genuine'  if  the  evidence  is  such  that  a
reasonable  jury  could  return  a  verdict  for  the  nonmoving  party."
McCarthy  v.  Dun  &  Bradstreet  Corp., 482  F.3d  184,  202  (2d  Cir.
2007)  (other  internal  quotation  marks  and  citations  omitted).
"In  assessing  the  record  to  determine  whether  there  is  [such]  a
genuine  issue  to  be  tried,  we  are  required  to  resolve  all
ambiguities  and  draw  all  permissible  factual  inferences  in  favor
of  the  party  against  whom  summary  judgment  is  sought."
Gorzynski  v.  JetBlue  Airways  Corp., 596  F.3d  93,  101  (2d  Cir.
2010)  (citing  Anderson  v.  Liberty  Lobby,  Inc., 477  U.S.  242,  255
(1986)).

On  a  motion  for  summary  judgment,  "[t]he  moving  party  bears
the  initial  burden  of  demonstrating  'the  absence  of  a  genuine
issue  of  material  fact.'"   F.D.I.C.  v.  Great  Am.  Ins.  Co., 607
F.3d  288,  292  (2d  Cir.  2010)  (quoting  Celotex  Corp.  v.  Catrett,
477  U.S.  317,  323  (1986)).    Where  that  burden  is  carried,  the
non-moving  party  "must  come  forward  with  specific  evidence
demonstrating  the  existence  of  a  genuine  dispute  of  material
fact."   Id. (citing  Anderson, 477  U.S.  at  249).    The  non-moving
party  "must  do  more  than  simply  show  that  there  is  some
metaphysical  doubt  as  to  the  material  facts  .  .  .  and  may  not
rely  on  conclusory  allegations  or  unsubstantiated  speculation."

Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal quotation marks and citations omitted).

**B.   Minimum Wage Claims**

Both the FLSA and the NYLL permit an employer to pay a tipped worker a cash wage that is lower than the statutory minimum wage, provided that the cash wage and the employee's tips, taken together, are at least equivalent to the minimum wage. See 29 U.S.C. §§ 203(m), 206(a)(1); 12 N.Y.C.R.R. § 146-1.3(b) (effective Jan. 1, 2011); 12 N.Y.C.R.R. § 137-1.5 (repealed effective Jan. 1, 2011);[4] Shahriar v. Smith & Wollensky Restaurant Grp., 659 F.3d 234, 239-40 (2d Cir. 2011).   This allowance against the minimum cash wage is known as a "tip credit."

Plaintiffs contend that defendants paid them an hourly wage that was below the generally permissible minimum wage, without fulfilling federal and state law requirements to take a tip credit allowance.   It is undisputed that at all times during their employment, each plaintiff was "paid at a tip credit minimum wage rate, that is, minimum wage minus the applicable

---

[4]    On January 1, 2011, the New York Department of Labor replaced its existing regulations of restaurant industry wages with the so-called "Hospitality Wage Order." See Barenboim v. Starbucks Corp., 698 F.3d 104, 110 (2d Cir. 2012), certified questions answered, 21 N.Y.3d 460 (2013); Hicks v. T.L. Cannon Corp., 35 F. Supp. 3d 329, 344 (W.D.N.Y. 2014).   Because the instant case involves claims that arose both before and after the Hospitality Wage Order's effective date, we cite both the current and the pre-2011 regulations.

tip credit allowance." Pls.' 56.1 Stmt. ¶ 3; see id. ¶¶ 7, 11, 15, 19. Thus, plaintiffs' wages were impermissibly low unless the Restaurant satisfied the requirements of the FLSA and NYLL to claim a tip credit. We consider the requirements of each of those statutes in turn.

### 1. FLSA

Under the FLSA, an employer may not claim a tip credit as to an employee's wages unless the employer has informed that employee of the provisions of the section of the FLSA permitting the tip credit. 29 U.S.C. § 203(m); see, e.g., Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 287 (S.D.N.Y. 2011); Chung v. New Silver Palace Rest., Inc., 246 F. Supp. 2d 220, 228-29 (S.D.N.Y. 2002). "This notice provision is strictly construed and normally requires that an employer take affirmative steps to inform affected employees of the employer's intent to claim the tip credit." Perez v. Lorraine Enters., Inc., 769 F.3d 23, 27 (1st Cir. 2014); see, e.g., Kilgore v. Outback Steakhouse of Fla., Inc., 160 F.3d 294, 298 (6th Cir. 1998); Reich v. Chez Robert, Inc., 28 F.3d 401, 404 (3d Cir. 1994); Hart v. Rick's Cabaret Int'l, Inc., 967 F. Supp. 2d 901, 934 (S.D.N.Y. 2013); Lanzetta v. Florio's Enters., Inc., 763 F. Supp. 2d 615, 623 (S.D.N.Y. 2011).

The employer "bear[s] the burden of showing that [it] satisfied the FLSA's notice requirement by, for example, providing employees with a copy of § 203(m) and informing them that their tips will be used as a credit against the minimum wage as permitted by law." He v. Home on 8th Corp., No. 09 Civ. 5630, 2014 WL 3974670, at *5 (S.D.N.Y. Aug. 13, 2014) (internal quotation marks omitted); see, e.g., Copantitla, 788 F. Supp. 2d at 288. "If the employer cannot show that it has informed employees that tips are being credited against their wages, then no tip credit can be taken and the employer is liable for the full minimum-wage . . . ." Chez Robert, 28 F.3d at 403.

Here, defendants point to no evidence that the Restaurant complied with the FLSA's tip credit notice requirement. Instead, defendants argue that the Court should "assume proper tip credit notification was provided," Defs.' Mem. at 3, because one of the Restaurant's managers testified that she "d[id]n't recall" whether the employees were given notice that the Restaurant was taking a tip credit. Deposition of Adriana Daci at 29:7-9 ("Daci Dep."), Bellovin Aff. Ex. D; see, e.g., Defs.' 56.1 Counterstmt. ¶¶ 4, 8, 12, 16, 20, 23. To make such an assumption in defendants' favor would be inconsistent with the principle that on a motion for summary judgment, "where the nonmoving party will bear the burden of proof on an issue at trial, the moving party may satisfy its burden by pointing to an

absence of evidence to support an essential element of the nonmoving party's case." Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473, 486 (2d Cir. 2014) (brackets and internal quotation marks omitted). Because the employer has the ultimate burden to prove compliance with the tip credit notice requirement, an employer opposing summary judgment on this issue must "do more than point to a dearth of evidence." Lorraine Enters., 769 F.3d at 30. Instead, the employer must "adduce definite competent evidence showing that waiters were informed of the tip credit." Id. As defendants here have not done so, the Restaurant is liable under the FLSA for plaintiffs' unpaid minimum wages without a tip credit allowance.

### 2. NYLL

The regulations implementing the NYLL also impose notice requirements upon an employer that desires to take a tip credit. See 12 N.Y.C.R.R. § 146-2.2 (effective Jan. 1, 2011); 12 N.Y.C.R. § 137-2.2 (repealed effective Jan. 1, 2011). In addition to notice, state records also impose a recordkeeping burden, by requiring that an employer "establish, maintain and preserve for at least six years weekly payroll records" that show the "tip credits, if any, claimed as part of the minimum wage." 12 N.Y.C.R.R. § 146-2.1(a)(9) (effective Jan. 1, 2011);

accord 12 12 N.Y.C.R.R. § 137-2.1(a)(7) (repealed effective Jan. 1, 2011).

Here, defendants "acknowledge and take responsibility for their mistake in not providing the proper notification in not providing the proper notification under the . . . NYLL." Defs.' Opp. Mem. at 3.   Although defendants also summarily assert that plaintiffs are not entitled to summary judgment on the NYLL claim, see id., they offer no argument for declining to award on this issue in light of their concession of fault.   Accordingly, the Restaurant is liable under the NYLL for plaintiffs' unpaid minimum wages without a tip credit allowance.

## C.   Overtime Claims

Plaintiffs contend defendants failed to pay them the proper minimum wage for their overtime hours.   Both the FLSA and regulations issued pursuant to the NYLL require an employer to pay an overtime wage of one and one-half times the regular rate for each hour worked in excess of forty per work week.   29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 146-1.4 (effective Jan. 1, 2011); 12 N.Y.C.R.R. § 137-1.3 (repealed effective Jan. 1, 2011).   For tipped employees, the minimum overtime cash wage is the employee's regular rate of pay before subtracting any tip credit, multiplied by one and one-half, minus the tip credit. See Copantitla, 788 F. Supp. 2d at 291-92 (citing 29 U.S.C.

§ 203(m); 29 C.F.R. §§ 531.60, 778.5) (FLSA); 12 N.Y.C.R.R. § 146-1.4 (NYLL).  Thus, under both federal and state law, "[i]t is a violation of the overtime requirement for an employer to subtract the tip credit first and then multiply the reduced rate by one and one half."  12 N.Y.C.R.R. § 146-1.4 (NYLL); accord Copantitla, 788 F. Supp. 2d at 291 (FLSA).  Instead, a lawful overtime wage for tipped employees paid the minimum tip credit wage is calculated by multiplying the statutory minimum wage by one and one half and then subtracting the tip credit.

Defendants "concede that there were occasional time periods in which Plaintiffs [were not] adequately compensated for their overtime hours worked."  Defs.' Opp. Mem. at 3; see Defs.' 56.1 Counterstmt. ¶ 27.  Indeed, the evidence demonstrates that on some occasions, the Restaurant paid an unlawfully low wage for overtime hours.  On some of those occasions, wage statements in the record show that the employee received straight pay (at a rate lowered by the improper tip credit allowance) for hours worked over forty per week.  For example, during the pay period ending November 28, 2010, plaintiff Krauchanka worked forty-four hours and was paid $4.65 for every one of those hours, including the last four.  Lee Decl. Ex. 7, at P546.  Similarly, during the pay period ending January 2, 2011, plaintiff Soltani worked fifty-eight hours and was paid $4.65 for every one of those hours, including the last eighteen.  Lee Decl. Ex. 7, at P633.

13

The record contains numerous other examples of straight pay for overtime hours.  <u>See</u> Lee Decl. Ex. 7, at P392, P547-P549, P551, P628-P632.

On other occasions, the Restaurant calculated the overtime rate by subtracting the tip credit from the overtime rate and then multiplying by one and one-half, which would result in underpayment of the employee even if the Restaurant were entitled to a tip credit allowance.  For example, during the pay period ending December 18, 2011, plaintiff Rep worked forty-seven hours; she was paid $5.00 (the minimum wage of $7.25 minus a $2.25 tip credit) for her first forty hours and $7.50 for the next seven.  Lee Decl. Ex. 7, at P430.  Thus, the Restaurant calculated her pay by multiplying the tip credit minimum wage by one and one-half rather than multiplying the minimum wage by one and one-half and then subtracting the tip credit, which would have resulted in an hourly overtime rate of $8.625.  Moreover, as discussed in Part II.B above, the Restaurant has failed to show that it was entitled to a tip credit allowance at all.

In response, defendants argue that the Restaurant corrected errors in its calculation of overtime if the undercompensated employees were brought to management's attention.  For example, Mirchandani testified at his deposition that "if there are any errors [in pay amounts], [the staff] bring it to our attention, and the errors are taken care of."  Mirchandani Dep. 60:15-17.

Defendants, producing pay statements that show periods where certain plaintiffs were paid at an overtime rate of $10.88 (i.e., the minimum overtime rate without a tip credit allowance), argue that such late overpayments were a common manner of correcting prior errors. See Bellovin Aff. Ex. L; Defs' Mem. at 3.

This defense based on subsequent corrections fails to cure defendants' violation of the overtime provisions of at least federal labor law. The FLSA has long been interpreted to include a "prompt payment" requirement. See United States v. Klinghoffer Bros. Realty Corp., 285 F.2d 487, 491 (2d Cir. 1960). Whether the prompt payment requirement has been violated "must be determined by reference to objective standards." Rogers v. City of Troy, N.Y., 148 F.3d 52, 58 (2d Cir. 1998). Specifically, payment of "overtime compensation earned in a particular workweek must [generally] be paid on the regular pay day for the period in which such workweek ends" and in any event "may not be delayed for a period longer than is reasonably necessary to compute and arrange for payment of the amount due." Conzo v. City of N.Y., 667 F. Supp. 2d 279, 288 (S.D.N.Y. 2009) (quoting 29 C.F.R. § 778.106); see, e.g., Mendez v. U.S. Nonwovens Corp., 2 F. Supp. 3d 442, 452-53 (E.D.N.Y. 2014). Defendants do not -- and could not -- argue that the Restaurant's claimed practice of making ad hoc corrections to

15

unlawfully low pay when prompted by employees met objective standards of prompt payment.

It should be apparent from the foregoing that, at least on certain occasions, the Restaurant failed to pay plaintiffs the appropriate overtime premium even if the Restaurant were to be allowed a tip credit. Furthermore, for the reasons discussed in Part II.B above, the Restaurant may not assert the benefit of a tip credit allowance. Accordingly, the Restaurant is liable to the extent that it failed to pay the minimum overtime wage, without a tip credit allowance, to plaintiffs for their hours worked in excess of forty per week.

## D. Wage Theft Prevention Act Claims

Plaintiffs next contend that defendants failed to comply with requirements of New York's Wage Theft Prevention Act ("WTPA"), which is the name of an amendment to the NYLL, effective on April 9, 2011. See 2010 N.Y. Laws ch. 564. Specifically, plaintiffs contend that they are entitled to statutory damages for defendants' failure to provide them, at the time of their hiring and annually thereafter, with notice of defendants' intent to take a tip credit, and to furnish them with regular wage statements that met the WTPA's requirements.

As a preliminary matter, defendants argue that summary judgment on WTPA claims is inappropriate because such claims

were not pleaded.    The premise underlying this argument is
incorrect.   The Amended Complaint alleges, <u>inter alia</u>:

> Defendants . . . operated their business with a policy
> of not providing proper wages [<u>sic</u>] statements as
> required under the New York Labor Law.  Defendants are
> required to provide itemized listings of deductions
> taken on each wage statement.  With respect to tipped
> employees, Defendants failed to satisfy the
> requirements under the NYLL because such tip credit
> allowance was never included in any wage statements to
> tipped employees . . . .   Moreover, with respect to
> all employees, Defendants failed to provide a wage
> statement that satisfied statutory requirements under
> the NYLL.  Defendants also failed to provide a proper
> wage and hour notice, at date of hiring and annually,
> to all non-exempt employees per requirements of the
> New York Labor Law.

Am. Compl. ¶ 60 (emphasis omitted).   This paragraph adequately
describes the substance of the plaintiffs' WTPA claims.
Moreover, allegations of defendants' failures to provide notice
of the tip credit allowance at hiring, annually, and in wage
statements are found elsewhere throughout the Amended Complaint.
<u>See, e.g.</u>, <u>id.</u> ¶¶ 27, 34, 37, 58.   The Amended Complaint also
asserts that plaintiffs are "entitled to recover from Defendants
. . . statutory penalties . . . pursuant to New York Labor Law."
<u>Id.</u> ¶ 61.

    These paragraphs in the Amended Complaint were adequate to
put defendants on notice of the WTPA claims, even though the
Amended Complaint refers generally to the New York Labor Law
rather than specifically to the Wage Theft Prevention Act.  As
already noted, the Wage Theft Prevention Act is not an entirely

distinct statute but rather an amendment to the NYLL. Furthermore, it is well established that "[t]he failure in a complaint to cite a statute, or cite the correct one, in no way affects the merits of a claim." Albert v. Carovano, 851 F.2d 561, 571 n.3 (2d Cir. 1988) (en banc).  As the Supreme Court recently emphasized, "[f]ederal pleading rules . . . do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." Johnson v. City of Shelby, Miss., 135 S. Ct. 346, 346 (2014) (reversing lower court's dismissal, on summary judgment, of 42 U.S.C. § 1983 claim for plaintiffs' "failure to invoke [§ 1983] in their complaint").  Finally, defendants do not contend that they were prejudiced in any particular way by plaintiffs' failure to invoke the WTPA specifically in the Amended Complaint.[5]   We therefore turn to the merits (to which defendants do not respond) of plaintiffs' two WTPA claims.

## 1. Tip Credit Notice

Under the WTPA, an employer must, at the time of an employee's hiring, and then annually on or before the first of

---

[5]   Defendants rely on a line of authority holding that "a party cannot seek summary judgment for himself on a new claim that has not been pled in his complaint." Hickey v. State Univ. of N.Y. at Stony Brook Hosp., No. 10 Civ. 1282, 2012 WL 3064170, at *5 (E.D.N.Y. July 27, 2012) (internal quotation marks omitted) (declining, where the complaint asserted only Title VII claims, to consider plaintiff's arguments for summary judgment on First Amendment and state Civil Service Law grounds).  This principle is inapposite where, as here, the claim is adequately pleaded in the complaint, albeit with an arguably imperfect reference to the statutory authority of the claim.

February, provide an employee with a wage notice containing, inter alia, allowances, including tip allowances, claimed as part of the minimum wage. 2010 N.Y. Laws ch. 564 § 3, amending N.Y. Labor Law § 195(1)(a). Prior to February 27, 2015, the WTPA allowed employees to recover, as statutory damages for violations of this wage notice requirement, $50 per work week, not to exceed $2,500. 2010 N.Y. Laws ch. 564 § 7, amending N.Y. Labor Law § 198(1-b).[6] Here, it is undisputed that the Restaurant did not provide plaintiffs with a wage notice form, either at hiring or annually on or before February 1. See Pls.' 56.1 Stmt. ¶ 24; Pls.' Mem. at 15-16.[7] Indeed, as discussed in Part II.B above, it is undisputed that the Restaurant never provided plaintiffs with any notice of its intention to take a tip credit allowance.

For those plaintiffs who were hired before the WTPA took effect on April 9, 2011, the failure of the Restaurant to provide tip credit notice at the time of hiring cannot support a claim under the WTPA, as the Second Circuit has held that the WTPA does not apply retroactively. See Gold v. N.Y. Life Ins. Co., 730 F.3d 137, 143-44 (2d Cir. 2013). Here, it is undisputed that plaintiffs Inclan, Krauchanka, Wade, and Soltani

---

[6]     Statutory damages for WTPA violations were increased on February 27, 2015. See 2014 N.Y. Laws ch. 537, § 2.
[7]     Defendants rely on a manager's inability to recall whether the Restaurant provided tip credit notice. See Defs.' 56.1 Counterstmt. ¶ 24. As discussed in Part II.B.1 above, this is not sufficient to demonstrate a genuine issue of material fact.

were all hired before the WTPA's effective date.  See Pls.' 56.1
Stmt. ¶¶ 1, 5, 13, 17.  The evidence is equivocal as to whether
plaintiff Rep was hired before, on, or after that date.  See
Deposition of Szilvia Agnes Rep at 48:12-50:6, Bellovin Aff. Ex.
G (Rep testified that she was hired in March or April 2011); see
also Pls.' 56.1 Stmt. ¶ 9 (asserting that the Restaurant hired
Rep in March 2011).  Thus, none of the plaintiffs is entitled to
summary judgment on WTPA wage notice statutory damages from the
date of hiring.

However, the WTPA also required the Restaurant to provide
annual notice of the tip credit to its employees on or before
February 1, 2012.  It is undisputed that two of the plaintiffs
(namely, Inclan and Soltani) remained employed at the Restaurant
after that date.  Pls.' 56.1 Stmt. ¶¶ 1, 17.[8]  As the Restaurant
did not provide them with WTPA-compliant wage notice statements,
plaintiffs may recover statutory damages of $50 per work week
during the time of their employment after that date.[9]

---

[8]    Plaintiffs state in their Rule 56.1 statement that it is undisputed
that plaintiff Krauchanka was employed at the Restaurant until April 2012.
Pls.' 56.1 Stmt. ¶ 5.  However, Krauchanka testified that he was fired from
the Restaurant in June 2011.  Deposition of Ivan Krauchanka at 41:4-5, 87:9-
18, Bellovin Aff. Ex. F.
[9]    The maximum statutory damages for this violation of $2,500 is
irrelevant, because both Inclan and Soltani ended employment within mere
months.  Pls.' 56.1 Stmt. ¶¶ 1, 17; Defs.' 56.1 Counterstmt. ¶ 1.

2.  **Wage Statements**

The WTPA also requires employers to include in each employee's pay statement an accounting of "gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages." 2010 N.Y. Laws ch. 564, § 3, amending N.Y. Labor Law § 195(3). Prior to February 27, 2015, the WTPA allowed employees to recover, as statutory damages for violations of this wage statement requirement, $100 per work week, not to exceed $2,500. See 2010 N.Y. Laws ch. 564 § 7, amending N.Y. Labor Law § 198(1-d).

The pay statements furnished by the Restaurant to its employees for pay periods prior to the pay period ending on June 12, 2011, contain the amount of tips earned during those periods. See, e.g., Lee Decl. Ex. 7, at P401, P481. However, these pay statements do not state the amount of the tip credit allowance. Thus, those pay statements were not in compliance with the WTPA. Beginning with the pay period ending on June 12, 2011, the Restaurant began to provide its employees with a supplemental form entitled "Payroll Payment Details" along with the pay statements generated by the Restaurant's payroll service providers. See Pls.' 56.1 Stmt. ¶ 22; Lee Decl. Ex. 5. Unlike the pay statements, that supplemental form showed the per-hour amount of the tip credit. However, it did not show the total amount of the tip credit allowance taken nor the employee's

gross   wages   before   tip   credit   allowance.   Thus,   these
supplemental forms did not cure the defects in the Restaurant's
pay   statements.   Accordingly,   plaintiffs   are   entitled   to
statutory damages of $100 per work week, from April 9, 2011,
through the end of each plaintiff's employment, not to exceed
$2,500 per plaintiff.


E.   **Spread-of-Hours Premium**

Under   the   regulations   implementing   the   NYLL,   a   restaurant
employee is entitled to an additional hour of pay at the minimum
hourly rate "[o]n each day on which the spread of hours exceeds
[ten]."   12 N.Y.C.R.R. § 146-1.6(a) (effective Jan. 1, 2011); 12
N.Y.C.R.R.   §   137-1.7   (repealed   effective   Jan.   1,   2011).   The
term "spread of hours" is defined as "the length of the interval
between the beginning and end of an employee's workday . . . .
includ[ing] working time plus time off for meals plus intervals
off duty."   12 N.Y.C.R.R. § 146-1.6 (effective Jan. 1, 2011);
accord 12 N.Y.C.R.R. § 137-3.11 (repealed effective Jan. 1,
2011).

Defendants   admit   that   the   Restaurant   failed   to   pay
plaintiffs a spread-of-hours premium when plaintiffs' workday
exceeded ten hours per day, although defendants claim that this
failure "was an honest mistake in the law."   Pls.' 56.1 Stmt.
¶ 28; Defs.' 56.1 Counterstmt. ¶ 28; Defs.' Mem. at 5.   The

Restaurant is therefore liable for unpaid spread-of-hours premiums where applicable.

**F.   FLSA Statute of Limitations**

Under the FLSA, the general statute of limitations for minimum wage and overtime claims is two years.  29 U.S.C. § 255(a).  However, if the employee proves that the employer's violation is willful, the limitations period is increased to three years.  Id.; Young v. Cooper Cameron Corp., 586 F.3d 201, 207 (2d Cir. 2009).[10]  To make out a willful violation, the employee must establish "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]."  McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988).  However, the category of willful conduct does not encompass conduct that is "merely negligent" or "unreasonabl[e]."  Id.; Reich v. Waldbaum, Inc., 52 F.3d 35, 39 (2d Cir. 1995).

Because of the difficulty in discerning, as a matter of law, whether unlawful conduct is on the one hand negligent or unreasonable, or on the other hand knowing or reckless, "[c]ourts in this Circuit have generally left the question of willfulness to the trier of fact."  Ramirez v. Rifkin, 568 F. Supp. 2d 262, 268 (E.D.N.Y. 2008) (collecting cases).  See also

---

[10]   In contrast, the NYLL's limitations period is six years.  See N.Y. Labor Law § 663(3).

<u>Hart v. Rick's Cabaret Int'l, Inc.</u>, 967 F. Supp. 2d 901, 937 (S.D.N.Y. 2013) ("Although willfulness can sometimes be determined at the summary judgment stage, the standard for proving willfulness is high."). We see no reason in this case to depart from the general reluctance of courts to resolve the question of willfulness on a motion for summary judgment.

Plaintiffs rely principally on the fact that NYHG and Mirchandani were defendants in a prior private wage-and-hour action. <u>See</u> Pls.' Mem. at 21-22; Pls.' 56. Stmt. ¶ 29. However, that case was settled without litigation on the merits or any finding of wrongdoing. <u>See</u> Stipulation of Voluntary Dismissal, <u>Afonso v. New York Hospitality Group, Inc.</u>, No. 10 Civ. 7782 (HB) (S.D.N.Y. Aug. 26, 2011). Furthermore, both Mirchandani and one of the Restaurant's managers testified that other than that prior lawsuit, the Restaurant had received no wage-related complaints. <u>See</u> Mirchandani Dep 48:4-7; Daci Dep. 13:25-14:2. We conclude that a jury could permissibly find that the Restaurant's violations were not willful. Thus, plaintiffs' request for summary judgment on the issue of willfulness is denied.

**G.  Liquidated Damages**

Plaintiffs request a ruling that they are entitled to liquidated damages under both the FLSA and the NYLL on the

ground that the Restaurant's violations of those laws were willful.  If this were the correct legal standard, plaintiffs' request would be denied for the reasons in Part II.F above.  However, a showing of willfulness is not required for liquidated damages to be awarded.  We address each statute in turn, followed by plaintiffs' contention that liquidated damages may be awarded cumulatively under both statutes.

### 1.   FLSA

"Under the FLSA, a district court is generally required to award a plaintiff liquidated damages equal in amount to actual damages" for violations of the FLSA's minimum wage and overtime provisions.  Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 150 (2d Cir. 2008) (citing 29 U.S.C. § 216(b)).  However, a district court has "discretion to deny liquidated damages where the employer shows that, despite its failure to pay appropriate wages, it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA."  Barfield, 537 F.3d at 150 (quoting 29 U.S.C. § 260).  "The employer bears the burden of proving good faith and reasonableness, [and] the burden is a difficult one, with double damages being the norm and single damages the exception."  Herman v. RSR Sec. Services Ltd., 172 F.3d 132, 142 (2d Cir. 1999) (citing Reich v. S. New Engl. Telecomms. Corp.,

121 F.3d 58, 71 (2d Cir. 1997)).  "To establish good faith, the employer must take active steps to ascertain the dictates of the FLSA and then act to comply with them."  RSR, 172 F.3d at 142. See also Brock v. Wilamowsky, 833 F.2d 11, 19 (2d Cir. 1987) ("The defense requires plain and substantial evidence of at least an honest intention to ascertain what the [FLSA] requires and to comply with it.").

In support of their good faith, defendants principally rely on an argument that they "consulted with attorneys to ensure their compliance with applicable FLSA statutes," arguing that "'reliance on erroneous advice from an outside source, such as counsel,'" will support a defense to liquidated damages.  Defs.' Mem. at 6 (quoting Lavin-McEleney v. Marist Coll., No. 96 Civ. 4081, 1999 WL 33500070, at *2 (S.D.N.Y. Sept. 28, 1999), aff'd, 239 F.3d 476 (2d Cir. 2001)).  But while it is undisputed that NYHG and Mirchandani retained counsel in the prior action, see Pls.' 56.1 Stmt. ¶ 29, the record contains no evidence as to the advice of prior counsel nor of whether defendants followed that advice -- far less whether the advice was erroneous.  Indeed, defendants asserted the attorney-client privilege to prevent the advice of prior counsel from coming into evidence.  See Mirchandani Dep. at 48:12-49:12.  In any event, even if defendants could establish subjective good faith, defendants would clearly be unable to establish objectively reasonable

grounds for thinking that their practices comported with the FLSA's requirements. Accordingly, there is no doubt that plaintiffs are entitled to the full amount of liquidated damages available under the FLSA.

### 2. NYLL

Like the FLSA, the NYLL provides for liquidated damages in addition to actual damages under some circumstances. See N.Y. Labor Law §§ 198(1-a), 663(1). The New York legislature has amended the liquidated damages provision twice in recent years, both times making it easier for employees to claim liquidated damages. See Ryan v. Kellogg Partners Inst. Servs., 19 N.Y.3d 1, 10 n.8 (2012).

Prior to November 24, 2009, an employee would be entitled to an additional twenty-five percent liquidated damages under the NYLL only if the employee could prove "that the employer's failure to pay the wage required by [article 6 of the NYLL] was willful." N.Y. Labor Law § 198(1-a) (version effective prior to Nov. 23, 2009); see also N.Y. Labor Law § 663(1) (version effective prior to Nov. 23, 2009). The meaning of willfulness under the NYLL's liquidated damages provision was considered to be the same as willfulness under the FLSA's statute of limitations provision. See Kuebel v. Black & Decker Inc., 643 F.3d 352, 366 (2d Cir. 2011); Hart v. Rick's Cabaret Int'l,

Inc., 967 F. Supp. 2d 901, 937 (S.D.N.Y. 2013); Moon v. Kwon, 248 F. Supp. 2d 201, 235 (S.D.N.Y. 2002).

The NYLL's liquidated damages provision was reformed in 2009 to more closely resemble the FLSA's provision.  Beginning on November 24, 2009, an employee would be presumptively entitled to liquidated damages "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law."  2009 N.Y. Laws ch. 372 § 1, amending N.Y. Labor Law § 198(1-a); see also 2009 N.Y. Laws ch. 372 § 3, amending N.Y. Labor Law § 663(1).  On April 9, 2011, the WTPA further aligned the NYLL's liquidated damages provision with that of the FLSA by increasing the amount of liquidated damages to one hundred percent.  See 2010 N.Y. Laws ch. 564 §§ 7, 16.  The statutory text of the liquidated damages provisions of the present NYLL is not identical to that of the FLSA.  Compare N.Y. Labor Law §§ 198(1-a), 663(1), with 29 U.S.C. § 260.  However, courts have not substantively distinguished the federal standard from the current state standard of good faith.  See, e.g., He v. Home on 8th Corp., No. 09 Civ. 5630, 2014 WL 3974670, at *7 n.19 (S.D.N.Y. Aug. 13, 2014); Eschmann v. White Plains Crane Service, Inc., No. 11 Civ. 5881, 2014 WL 1224247, at *9 (E.D.N.Y. Mar. 24, 2014).  Nor do defendants argue that there is a difference between the relevant federal and state standards.  Thus, for the reasons in Part

II.G.1 above, the Restaurant is liable for liquidated damages based on NYLL violations beginning on November 24, 2009. However, for the reasons in Part II.F above, we decline to rule that the Restaurant is liable as a matter of law for liquidated damages based on the alleged willfulness of its NYLL violations prior to November 24, 2009.

### 3.   Cumulative Liquidated Damages

Plaintiffs seek a ruling that where the liquidated damages provisions of both the FLSA and the NYLL apply, plaintiffs may recover liquidated damages cumulatively under both statutes. There is no appellate authority as to whether a plaintiff may recover cumulative (sometimes called "simultaneous" or "stacked") liquidated damages under the FLSA and NYLL, and the district courts in this Circuit are deeply divided.  Courts that have awarded cumulative liquidated damages have begun their analysis from the proposition that liquidated damages under the FLSA are described as "compensation, not a penalty," Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 583 (1942); see, e.g., United States v. Sabhani, 599 F.3d 215, 260 (2d Cir. 2010), whereas the NYLL's liquidated damages provision is said to "constitute a penalty," Reilly v. Natwest Markets Grp., Inc., 181 F.3d 253, 265 (2d Cir. 1999) (quoting Carter v. Frito-Lay, Inc., 74 A.D.2d 550, 551 (1st Dep't 1980), aff'd, 52 N.Y.2d 994

(1981)).   Those  courts  have  reasoned  that  "a  prevailing
plaintiff  who  can  justify  both  [FLSA]  liquidated  damages  and
[NYLL  liquidated]  damages  should  be  eligible  to  recover  both,
since  they  .  .  .  serve  fundamentally  different  purposes."  Ke v.
Saigon  Grill,  Inc., 595  F.  Supp.  2d  240,  262  (S.D.N.Y.  2008)
(internal  quotation  marks  omitted);  see,  e.g.,  Gurung  v.
Malhotra, 851  F.  Supp.  2d  583,  593-94  (S.D.N.Y.  2012);  Santillan
v.  Henao, 822  F.  Supp.  2d  284,  297  (E.D.N.Y.  2011);  Ho  v.  Sim
Enters.,  Inc., No.  11  Civ.  2855,  2014  WL  1998237,  at  *19
(S.D.N.Y.  May  14,  2014).

In  contrast,  other  district  courts  have  declined  to  award
cumulative  liquidated  damages  on  the  ground  that  "the
distinction  between  compensatory  and  punitive  for  characterizing
liquidated  damages  under  the  FLSA  and  NYLL  [is]  semantic,
exalting  form  over  substance."  Gortat  v.  Capala  Bros., 949  F.
Supp.  2d  374,  381  (E.D.N.Y.  2013);  see,  e.g.,  Parilla  v.  Salt  &
Pepper  on  33rd  St.  Inc., No.  12  Civ.  6382,  2013  WL  4536628,  at
*2  (S.D.N.Y.  Apr.  8,  2013).   These  courts  have  reasoned  that
cumulative  liquidated  damages  are  inappropriate  because  "[b]oth
forms  of  damages  seek  to  deter  wage-and-hour  violations  in  a
manner  calculated  to  compensate  the  party  harmed."  Chuchuca  v.
Creative  Customs  Cabinets  Inc., No.  13  Civ.  2506,  2014  WL
6674583,  at  *16  (E.D.N.Y.  Nov.  25,  2014);  see,  e.g.,  Shiu  v.  New
Peking  Taste  Inc., No.  11  Civ.  1175,  2014  WL  652355,  at  *13

(E.D.N.Y. Feb. 19, 2014); <u>Yin v. Kim</u>, No. 07 Civ. 1236, 2008 WL 906736, at *7 (E.D.N.Y. Apr. 1, 2008).

We find the latter view more persuasive. Even assuming there were once a plausibly substantive distinction between liquidated damages under the FLSA and NYLL, the recent amendments to the NYLL have undermined the basis for such a distinction. The view that NYLL liquidated damages are penalties rather than compensation rested on the premise that NYLL liquidated damages required proof of the employer's willfulness. <u>See</u> <u>Carter</u>, 74 A.D.2d at 550-51 ("Plaintiff contends that the provision for liquidated damages is not a penalty but additional compensation. We do not find this contention convincing in light of the application of the application of this provision being expressly conditioned on a finding of willful conduct on the part of the employer.).[11] But this premise is no longer accurate, as after November 24, 2009, liquidated damages no longer depend upon the willfulness of the violations. Thus, the distinction drawn between the purposes of the two statutes is no longer persuasive. Furthermore, after the enactment of the WTPA, the amounts of liquidated damages are identical under the two statutes. <u>See</u> <u>Gunawan v. Sake Sushi Rest.</u>, 897 F. Supp. 2d 76, 91 n.11 (E.D.N.Y. 2012)

---

[11]   <u>See also</u> <u>Reilly</u>, 181 F.3d at 265 (noting that "liquidated damages under the [NYLL] 'constitute a penalty' to deter an employer's <u>willful</u> withholding of wages due" (emphasis added) (quoting <u>Carter</u>, 74 A.D.2d at 550)).

(acknowledging that "[t]o the extent the federal and state statutes now provide for essentially identical remedies with respect to liquidated damages, it is harder to argue that they are designed to compensate a plaintiff for disparate harms"); Gortat, 949 F. Supp. 2d at 381 n.3 ("The amendment[s] . . . bespeak[] an acknowledgement that the compensatory/punitive dichotomy is a semantic one."). Accordingly, we decline to rule that plaintiffs are entitled to cumulative liquidated damages under the FLSA and NYLL.[12]

## H.   Joint and Several Liability

Plaintiffs request a ruling that Mirchandani was a joint employer within the meaning of the FLSA and the NYLL and that he is therefore jointly and severally liable with NYHG for violations of those laws.   In their cross-motion, the Moving Defendants request a ruling dismissing both RHI and Mirchandani from the case on the ground that neither that neither was an employer of plaintiffs.   Plaintiffs do not oppose the Moving Defendants' motion as to RHI, nor do plaintiffs dispute that RHI has "no relationship with NYHG or Le Bateau Ivre."   Defs.' 56.1

---

[12]   We reserve judgment on whether cumulative liquidated damages could be available for violations prior to November 24, 2009.   Such violations could only serve as the basis for liquidated damages under either the FLSA or NYLL if they were willful, both because of the then-prevailing standard under the NYLL and because FLSA claims arising before June 8, 2010, would be time-barred if premised on non-willful violations.   In Part II.F above, we held that plaintiffs are not entitled to summary judgment on the question of willfulness.   Accordingly, the issue of cumulative liquidated damages is not ripe for decision as to pre-November 24, 2009 claims.

Stmt. ¶ 24. Accordingly, plaintiffs' claims against RHI are dismissed, and we focus on the parties' arguments with respect to Mirchandani.

The FLSA defines the employer-employee relationship broadly, "'cover[ing] some parties who might not qualify as such under a strict application of traditional agency law principles,' in order to effectuate the remedial purposes of the act." Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 141 (2d Cir. 2008) (quoting Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 326 (1992)). "[T]he determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in 'economic reality rather than technical concepts,' determined by reference not to 'isolated factors, but rather upon the circumstances of the whole activity.'" Barfield, 537 at 141 (quoting Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28, 33 (1961); Rutherford Food Corp. v. McComb, 331 U.S. 722, 730 (1947)). Thus, within the context of the FLSA, employment is "a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." Barfield, 537 at 141-42.

An employee may simultaneously have multiple employers within the meaning of the FLSA. See, e.g., Zheng v. Liberty Apparel Co., 355 F.3d 61, 66 (2d Cir. 2003). Under certain circumstances, the FLSA permits "an individual within a company

33

that . . . employs a worker [to be held] personally liable for damages as that worker's 'employer.'" Irizarry v. Catsimatidis, 722 F.3d 99, 105 (2d Cir. 2013).  In determining whether those circumstances obtain here, we are guided by the two Second Circuit precedents squarely addressing this issue.  See Irizarry, 722 F.3d 99; RSR, 172 F.3d 132.

The first, RSR, involved a corporation ("RSR") in the business of providing security guard services, which had failed to pay those guards minimum wage and overtime.  One of RSR's two shareholders was a lawyer named Portnoy.  RSR, 172 F.3d at 136.  Portnoy was also chairman of the board, and had some involvement in RSR's day-to-day business (portions of which were run out of Portnoy's law office), although he did not supervise the security guards.  Id.  Some of RSR's employees (including senior executives) periodically reported to Portnoy, and Portnoy occasionally gave them instructions.  Id. at 136-37.  Portnoy, who was "viewed by others as having control over RSR," and "represented himself . . . as having such authority," dominated RSR in part because his access to bank credit permitted him to "exercise[] financial control."  Id.  The Second Circuit affirmed the district court's ruling, after a bench trial, that Portnoy was a joint employer of the security guards.  Id. at 141.

Applying the economic reality test under these circumstances, the RSR court began with the factors identified by Carter v. Dutchess Community College, 735 F.2d 8 (2d Cir. 1984), as relevant to that test: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." RSR, 172 F.3d at 139 (quoting Carter, 735 F.2d at 12).[13]  The Circuit held that the first three of these Carter factors were satisfied, as Portnoy had hired managers (including "individuals who were in charge of the guards"); Portnoy occasionally assigned guards to work locations and directed a colleague to revised the company's employment forms; and, although Portnoy did not set wages, he had previously put an end to an illegal pay practice and had occasionally signed payroll checks. RSR, 172 F.3d at 140.  In finding that Portnoy was the guards' employer, the Circuit emphasized that the existence of an employer-employee relationship "does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees." Id. at 139; see

---

[13]    Neither individual nor joint liability under the FLSA was at issue in Carter appeal.  Instead, the issue was whether a college that used college-educated prison inmates as teaching assistants in classes offered at the prison could be held liable under the FLSA as an employer of those inmates, notwithstanding the prison's ultimate control over its inmate population. See Carter, 735 F.2d at 12.

also id. ("Control may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA . . . ."). The Circuit also emphasized Portnoy's exercise of general authority in, and his financial control, of RSR. Id. at 140.

The other Second Circuit precedent, Irizarry, was a wage-and-hour action against a substantial supermarket chain ("Gristede's") and John Catsimatidis, its chairman, president, and CEO. On summary judgment, the district court ruled that Catsimatidis was the plaintiffs' employer. Affirming, the Second Circuit built on the RSR analysis by emphasizing two particular areas of inquiry for cases involving individual defendants alleged to be FLSA employers. The first such area of inquiry identified in Irizarry is "the scope of an individual's authority or 'operational control' over a company." Irizarry, 722 F.3d at 106. As the Circuit explained: "It is appropriate . . . to require some degree of individual involvement in a company in a manner that affects employment-related factors such as workplace conditions and operations, personnel, or compensation." Id. at 109. Thus, to be held as an employer, an individual must "exercise[] operational control over employees," which the individual does "if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." Id. at 110;

see also id. ("Although this does not mean that the individual 'employer' must be responsible for managing plaintiff employees -- or indeed that he or she must have directly come into contact with the plaintiffs, their employees, or their schedules -- the relationship between the individual's operational function and the plaintiffs' employment must be closer in degree than simple but-for causation.").

The second area of inquiry identified in Irizarry is whether the power of the putative individual employer was "hypothetical" or "actual." Id. at 106. As the Circuit explained, "[o]wnership, or a stake in a company, is insufficient to establish that an individual is an 'employer' without some involvement in the company's employment of the employees." Id. at 111.

Considering these two areas, the Circuit noted that Catsimatidis was a hand's-on executive involved in Gristede's "banking," "financial[s]," "real estate," "merchandising," "governmental relations," and "relationships with vendors," id. at 112, and who both held and exercised the ultimate power "to control Gristede's operations at a high level," id. at 113 n.7. Furthermore, "[a]lthough Catsimatidis did not exercise managerial control in stores on the day-to-day level of a manager . . . he exercised influence in specific stores on multiple occasions." Id. at 113. Catsimatidis made regular

check-ups on Gristede's stores, and from time to time he would "address problems that occurred in individual stores." Id. The Circuit concluded that "Catsimatidis had functional control over the enterprise as a whole." Id. at 116.

The Irizarry court also emphasized that "Catsimatidis satisfied two of the Carter factors in ways that we particularly emphasized in RSR: the hiring of managerial employees and overall financial control of the company." Irizarry, 722 F.3d at 116; see id. at 114-16 (analyzing Carter factors). Reviewing the totality of the circumstances, the court explained that although there was no evidence that Catsimatidis was personally responsible for FLSA violations, nor that he ever interacted with the plaintiffs, his "actions and responsibilities -- particularly as demonstrated by his active exercise of overall control over the company, his ultimate responsibility for the plaintiffs' wages, his supervision of managerial employees, and his actions in individual stores -- demonstrate that he was an 'employer' for purposes of the FLSA." Id. at 117.

Guided by the analysis of RSR and Irizarry, we agree with plaintiffs that Mirchandani was their employer within the meaning of the FLSA. We begin with Mirchandani's operational control over the Restaurant, which is amply evidenced by his own testimony. See Irizarry, 722 F.3d at 106-10. Mirchandani was the sole owner of NYHG, and he described himself as its

38

"president."   Defs.' 56.1 Stmt. ¶ 21; Mirchandani Dep. 9:5-10.
Mirchandani testified that he "signed the lease on behalf of the
restaurant," Mirchandani Dep. 10:17-19, and that he personally
signed contracts with the Restaurant's vendors, Mirchandani Dep.
11:2-10.   Mirchandani also personally hired the Restaurant's
management team, including its executive chef.   Mirchandani Dep.
9:11-18, 21:11-18; see Pls.' Opp. Mem. 6.   Mirchandani "h[e]ld
weekly meeting[s] with the management team," Defs.' 56.1
Counterstmt. ¶ 31; see Mirchandani Dep. 17:25-18:6, at which
they discussed "[r]estaurant operations," Mirchandani Dep.
18:10-12.   "[I]ssues regarding wage and hour were addressed" at
those meetings.   Defs.' 56.1 Counterstmt. ¶ 31; see Mirchandani
Dep. 18:13-15.   When the prior lawsuit was brought against the
Restaurant, Mirchandani discussed it with his managers, and
instructed them to "keep accurate records" of "wage and
overtime" and tips.   Mirchandani Dep. 19:5-20:3.   Furthermore,
in addition to his weekly meeting with the Restaurant's
management, Mirchandani would "eat and drink" at the Restaurant
and, on those visits, he would "get an overview" of operations
"[b]y keeping [his] eyes open."   Mirchandani Dep. 17:13-24.

It is apparent that, like the individual defendants in
Irizarry and RSR, Mirchandani actively exercised operational
control and oversight over the Restaurant.   Furthermore, this
operational control directly affected plaintiffs' conditions of

employment, as Mirchandani had at least shared responsibility for the Restaurant's pay policies. Mirchandani testified that, as for the kitchen staff, the Restaurant's chef was responsible for determining whether the employees' qualifications merited a salary above the minimum wage; but "[o]n occasion" the "chef ha[d] to get [Mirchandani's] okay on it before he gives them a higher pay." Mirchandani Dep. 28:13-20.  Moreover, Mirchandani testified that he himself "set th[e] policy" that all "front-of-the-house staff" -- i.e., waitstaff such as plaintiffs -- were paid minimum wage plus overtime.  Mirchandani Dep. 28:21-29:6.[14]

Defendants contend that although Mirchandani had potential power over the Restaurant's affairs, as any business owner would, he did not exercise that power.  See, e.g., Defs.' Mem. at 6.  Defendants are correct insofar as mere "[o]wnership . . . is insufficient to establish that an individual is an

---

[14]   Separately, in response to the question "how do you determine the rate," Mirchandani testified: "The rate is already determine[d].  It's in my office.  My bookkeepers handle it.  We call in a payroll."  Mirchandani Dep. 27:6-10.  It is clear from context that the bookkeeper's role was to "handle" the implementation of the regular wage payments, in cooperation with a payroll service.  Defendants' contention that the Restaurant's bookkeeper chose the amount to pay the Restaurant's employees is thus not only implausible, it is also not supported by the record.

Additionally, in a subsequent affidavit, Mirchandani stated: "I did not determine the rate . . . of payment for any of the Plaintiffs in this case" or "for any employees at the level of any of the Plaintiffs in this case."  Affidavit of Raju S. Mirchandani, dated July 23, 2014, ¶¶ 16-17, Bellovin Aff. Ex. K.  We disregard this affidavit to the extent that it contradicts Mirchandani's deposition testimony.  See Hayes v. N.Y.C. Dep't of Corrections, 84 F.3d 614, 619 (2d Cir. 1996) ("a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or correction, contradicts the affiant's previous deposition testimony"); Mack v. United States, 814 F.2d 120, 124 (2d Cir. 1987) ("a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment").

'employer.'"   <u>Irizarry</u>, 722 F.3d at 111.   However, for the aforementioned reasons, Mirchandani's own testimony and the other undisputed facts demonstrate his active, extensive involvement in the business of its Restaurant including its decisions on employee-related matters.

As in Irizarry and RSR, we also consider the <u>Carter</u> factors.   <u>See</u> <u>Irizarry</u>, 722 F.3d at 114-16; <u>RSR</u>, 172 F.3d at 139-40.   Two of these factors clearly support the conclusion that Mirchandani was plaintiffs' employer.   First, Mirchandani "had power to hire and fire the employees."   <u>Carter</u>, 735 F.2d at 12.   Defendants argue that Mirchandani neither hired nor fired any of this case's plaintiffs, nor for that matter any low-level employees.   Defs.' 56.1 Stmt. ¶¶ 25-26.   However, although one of the Restaurant's managers testified that she was "in charge of promotion, hiring, [and] firing," Daci Dep. at 18:13-14, another of the Restaurant's managers testified that Mirchandani personally approved the Restaurant's hires, Deposition of Aisa Kasim at 10:25-11:23, Bellovin Aff. Ex. E.   And Mirchandani himself testified that, "[o]n occasion," he terminated employment of the Restaurant's employees.   Mirchandani Dep. 21:19-23.   More importantly, it is undisputed that Mirchandani selected his management team.   <u>See</u> <u>RSR</u>, 172 F.3d at 140 ("Although this hiring involved mainly managerial staff, the

41

fact that he hired individuals who were in charge of the [employees] is a strong indication of control.").

Second, Mirchandani "determined the rate . . . of payment" for plaintiffs and other employees. Carter, 735 F.2d at 12. As already discussed, Mirchandani "set th[e] policy" that front-of-the-house staff, including plaintiffs, would be paid the minimum wage, and he also approved higher salaries where warranted for kitchen staff. Mirchandani Dep. 28:21-29:6.[15]

Ultimately, we must consider "the totality of the circumstances, no one of which is exclusive." RSR, 172 F.3d at 139. Here, the evidence inescapably leads to the conclusion that Mirchandani dominated, financially controlled, and exercised significant functional control over not only the general business affairs of the Restaurant, but indeed over plaintiffs' wages. As a practical matter, Mirchandani was the Restaurant's "top man." Irizarry, 722 F.3d at 116 (quoting Donovan v. Grim Hotel Co., 747 F.2d 966, 972 (5th Cir. 1984)). Thus, he was plaintiffs' employer within the meaning of the FLSA.[16]

---

[15]    As for the other Carter factors, the evidence is at best equivocal that Mirchandani set employee schedules, and we are unpersuaded that Mirchandani himself maintained employee records. However, "[n]o one of the factors standing alone is dispositive." RSR, 172 F.3d at 139.

[16]    Defendants rely on Wirtz v. Pure Ice Co., 322 F.2d 259 (8th Cir. 1963). But to describe Pure Ice is to distinguish it. There, the individual defendant was a majority shareholder who lived in a different city from the company's plant, which he visited only two or three times per year; he had nothing to do with the company's employees or their wages, and he was so far removed from its operations that it took him at least six weeks to learn that

Neither the New York Court of Appeals nor the Second Circuit has decided whether "the tests for 'employer' status are the same under the FLSA and the NYLL." Irizarry, 722 F.3d at 117; see, e.g., Ethelberth v. Choice Sec. Co., No. 12 Civ. 4856, 2015 WL 861756, at *15, -- F. Supp. 3d. ---, --- (E.D.N.Y. Feb. 27, 2015). However, "district courts in this Circuit have consistently interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition used by the FLSA." Ho v. Sim Enters., Inc., No. 11 Civ. 2855, 2014 WL 1998237, at *10 (S.D.N.Y. May 14, 2014) (citing Moon v. Kwon, 248 F. Supp. 2d 201, 236 n.17 (S.D.N.Y. 2002)). The parties do not argue otherwise. Accordingly, we hold that Mirchandani was plaintiffs' employer for the purpose of both the FLSA and the NYLL, and that he will be jointly and severally liable for any judgment resulting from plaintiffs' claims.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for partial summary judgment (Doc. 80) is granted in part and denied in part, and the Moving Defendants' motion for summary judgment (Doc. 85) is granted in part and denied in part. To reiterate, the Court rules that:

---

its manager had left the country with no forwarding address, leaving the manager's wife in charge. Id. at 260, 263. "When he did learn of [this], he acquiesced in the arrangement," as he intended to sell the business. Id. at 260-61.

(1) plaintiffs are entitled to unpaid minimum wages under the FLSA and the NYLL, without a tip credit allowance;

(2) plaintiffs are entitled to unpaid overtime wages under the FLSA and the NYLL, without a tip credit allowance;

(3) plaintiffs Inclan and Soltani are each entitled to statutory damages for improper tip notice credit under the WTPA of $50 per work week, from February 1, 2012, through the termination of their employment;

(4) plaintiffs are each entitled to statutory damages for improper pay statements under the WTPA of $100 per work week, from April 9, 2011, through the end of each plaintiff's employment, not to exceed $2,500 per plaintiff;

(5) plaintiffs are entitled to unpaid spread-of-hours premiums under the NYLL where applicable;

(6) plaintiffs are entitled to liquidated damages under the FLSA or NYLL, as applicable, but not to be awarded cumulatively;

(7) defendants NYHG and Mirchandani will be held jointly and severally liable for damages under both the FLSA and the NYLL; and

(8) the claims against defendant RHI are dismissed.

Additionally, we note that some of the materials submitted with the Court's courtesy copies of plaintiffs' motion papers have not been filed, electronically or otherwise, although plaintiffs did not request leave to proceed in this manner.  See ECF Doc. No. 81-1 ("ALL EXHIBITS REDACTED ON ECF").  It is improper not to make a full public record.  See Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 121 (2d Cir. 2006) ("[D]ocuments submitted to a court for its consideration in a summary judgment motion are -- as a matter of law -- judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment.").  Plaintiffs' counsel is referred to Rule 5.2 of the Federal Rules of Civil Procedure and Section 21 of this Court's Electronic Case Filing Rules and Instructions, and plaintiffs' counsel is directed to file the supporting exhibits via ECF forthwith.  The Court would not object to the redaction of home addresses and social security numbers.

Finally, counsel are directed to appear for a conference before the Court on April 16, 2015, at 2:30 p.m., to discuss the resolution of this case by settlement or trial.

**IT IS SO ORDERED.**

Dated:     New York, New York
           March 26, 2015

                                    NAOMI REICE BUCHWALD
                                    UNITED STATES DISTRICT JUDGE

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

**Attorney for Plaintiffs**

C.K. Lee, Esq.
Lee Litigation Group, PLLC
30 East 39th Street, 2nd Floor
New York, NY 10016

**Attorneys for Defendants**

Marshall B. Bellovin, Esq.
Evan E. Richards, Esq.
Ballon Stoll Bader & Nadler, P.C.
729 Seventh Avenue, 17th Floor
New York, NY 10019